PUOY K. PREMSRIRUT, ESQ.
Nevada Bar No. 7141
**BROWN BROWN & PREMSRIRUT**
520 S. Fourth Street, 2nd Floor
Las Vegas, NV 89101
(702) 384-5563
(702) 385-6965 Fax
puoy@brownlawlv.com
*Attorney for Creditor*
*NEW U LIFE CORPORATION*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>T1 PAYMENTS, LLC,<br><br>Debtor. | Case No. BK-23-10290-MKN<br><br>Chapter 7<br><br>**NEW U LIFE CORPORATION'S JOINDER AND OPPOSITION TO TRUSTEE'S MOTION TO APPROVE SALE OF ESTATE'S INTEREST IN CERTAIN LITIGATION CLAIMS (11 U.S.C. § 363)**<br><br>Hearing Date: May 22, 2024<br>Hearing Time: 2:30 p.m.<br><br>Hon. Mike K. Nakagawa |

New U Life Corporation ("Creditor" or alternatively "New U Life"), creditor in the above referenced bankruptcy proceeding, by and through its undersigned counsel, hereby files its Joinder to the Opposition to Motion to Approve Sale of Estate's Interest in Certain Litigation Claims (11 U.S.C. § 363) filed by 36 Circles, LLC on May 8, 2024 (ECF No. 93) and Opposition to Trustee's Motion to Approve Sale of Estate's Interest in Certain Litigation Claims (11 U.S.C. § 363) (ECF No. 83).[1]

---

[1] Creditor requests that pursuant to FRE 201(b), this Court take judicial notice of all materials appearing on the docket in the above-captioned Chapter 7 proceeding and the case pending before the United States District Court of Nevada, styled as *T1 Payments, LLC v. New U Life Corporation*, Case No. 2:19-cv-01816. *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980); *see also Bank of America, N.A. v. CD-04, Inc. (In re Owner Management Service, LLC Trustee Corps.)*, 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015) ("The Court may consider the records in this case, the underlying bankruptcy case and public records.").

This Opposition is based upon the following grounds and the following reasons:

(1): The Trustee lacks standing to assert alter ego claims personal to New U Life and may not assign them;

(2) The Purchase and Sale Agreement must be rejected for failure to exclude alter ego and piercing of the veil claims that are personal to New U Life;

(3) The Trustee must reform the language in the APA to authorize the Creditor claims to proceed; and

(4) The proposed sale is against the interest of the Creditors.

This Opposition is supported by the following Memorandum of Points and Authorities, the pleadings and papers on file herein, and any argument this Court may entertain regarding the Motion at the hearing.

---

All references to "ECF No." are to the numbers assigned to the documents filed in the bankruptcy case identified in the caption above ("Case"), as they appear on the docket ("Docket") maintained by the Clerk of the Court of the United States Bankruptcy Court for the District of Nevada. All references to "Fed ECF No." are to the numbers assigned to the documents filed in the case styled as *T1 Payments, LLC v. New U Life Corporation,* Case No. 2:19-cv-01816 pending in the United States District Court of Nevada as they appear on the docket ("Docket") maintained by the Clerk of the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Leonard E. Schwartzer, Chapter 7 Trustee's ("Trustee") Motion to Approve Sale of Estate's Interest in Certain Litigation Claims (11 U.S.C. § 363) (the "Motion") improperly seeks approval of the transfer of alter ego claims personal to New U Life that are not assignable. Schwartzer predicates his authority to sell claims based upon his determination that the assets of the bankruptcy estate include numerous litigation claims that are pending in various courts, aggregating them wholesale as "Estate Litigation Claims".

The Trustee proceeds to sub-categorize the entirety of the Estate Litigation Claims into three (3) categories listing an itemized price for each "bundle":

| | |
|---|---|
| Bundle 1. Alter Ego Claims | $20,000.00 |
| Bundle 2. Kasdon/King Chapter 5 Claims | $ 6,500.00 |
| Bundle 3. Affirmative Claims | $ 3,500.00 |

At no point in does the Trustee provide any limiting language excluding claims that are not part of the debtor's estate. Instead, the Purchase and Sale Agreement includes limitless language describe to the "Alter Ego Claims":

> **"The claims made against Kasdon, Debra King, and Amber Fairchild in their individual capacities (collectively, the "Individual Defendants") based on "alter ego" theories (collectively, the "Alter Ego Claims"), which are Estate Litigation Claims. The Alter Ego Claims include, *but are not limited* to, the following:**
>
> *T1 Payments, LLC v. New U Life Corporation* (USDC Case No. 19-cv-01816):
>
> · Fraud against the Individual Defendants;
>
> · Conversion against the Individual Defendants;
>
> · Civil theft against the Individual Defendants;
>
> · Unjust Enrichment against the Individual Defendants;
>
> · Civil Rico pursuant to NRS 207.470 against the Individual Defendants; and
>
> · Civil Rico pursuant to 18 U.S.C. § 1961, *et seq*., against the Individual Defendants.

Not only does the Motion and APA fail to contain exclusionary language as to New U Life's personal claims render the definition accurate, but it interjects vague broad language that even more than what is enumerated is consumed by the definition of the "Alter Ego Claims."

Aside from the definitional deficiencies in the Motion and APA, the omission of any distinction between what claims the Trustee does have standing to bring and therefore assign, versus what claims are personal to New U Life mandate denial of any sale approval. The Estate does not own any of the claims asserted by New U Life against the non-debtor defendants, rendering the transaction documents proffered by the instant Motion fundamentally misleading. Moreover, the Estate does not own the companion alter ego claims personal to New U Life, versus general alter ego claims which the Trustee may actually pursue and therefore assign.

Without substantial reformation, the Trustee's Motion and corresponding APA must be rejected outright.

## II. BACKGROUND AND PROCEDURAL HISTORY

***Card Payments Processing Agreement***

1. On October 26, 2018, New U Life and Debtor T1 Payments, LLC ("Debtor" or alternatively "T1 Payments") entered into a Card Payments Processing Agreement ("Agreement"), whereby Debtor was to provide payment processing services to enable Creditor to enter into credit card payment processing transactions with its customers.[2]

2. After New U Life processed with T1 Payments for a mere two weeks, T1 Payments abruptly closed New U Life's gateway account and refused to release any of the $1.451 million of New U Life's funds it was holding. The held funds are New U Life's own sales proceeds from credit card payment transactions of New U Life customers.

3. After New U Life made a formal request for the return of its funds, T1 Payments contended it was entitled to charge New U Life an early termination fee of approximately $1.2

[2] A true and correct copy of the Agreement dated October 26, 2018 is attached as Exhibit "1" to the Declaration Of: Vanessa B. Pierce in Support of Motion to Modify the Automatic Stay for Judgment Only, Not Enforcement, Pursuant to 11 U.S.C. § 362(d)(1), Request for Comfort Order Under 11 USC 362(j) as to Non-Debtors, and Waiver of the 14-Day Stay Under FRBP 4001(a)(3) (ECF No. 41)

million, notwithstanding the fact that T1 Payments, not New U Life, was the party who terminated the contract. The Agreement states that T1 may assess an early termination fee "in the event Merchant terminates this Agreement prior to expiration of the Agreement." Because T1 Payments terminated the Agreement—not New U Life—the early termination fee provision of the Agreement plainly does not apply.

4. T1 Payments also claimed it was entitled to hold the entirety of New U Life's funds as reserves until "at least December 16, 2019."

5. Although that date has long passed, T1 Payments has failed to release any of the New U Life's funds in the amount of $1.451 million.

***Complaint Filed in Nevada Federal Court***

6. After New Life repeatedly demanded that T1 Payments release its processing proceeds, on October 17, 2019, T1 Payments preemptively filed a complaint against New U Life in the United States District Court of Nevada styled as *T1 Payments, LLC v. New U Life Corporation,* Case No. 2:19-cv-01816 ("Nevada Federal Case"), asserting one cause of action for Declaratory Relief requesting that the court resolve the respective rights of the parties under the Agreement. Specifically, T1 Payments seeks a declaration from the court that it is entitled to the early termination fee; that it is entitled to hold New U Life's funds as "reserves" through at least December 16, 2019; and that New U Life is not entitled to any other sums from T1 Payments. A true and correct copy of the Nevada Federal Case Docket is attached as Exhibit "2" to the Declaration Of: Vanessa B. Pierce in Support of Motion to Modify the Automatic Stay for Judgment Only, Not Enforcement, Pursuant to 11 U.S.C. § 362(d)(1), Request for Comfort Order Under 11 USC 362(j) as to Non-Debtors, and Waiver of the 14-Day Stay Under FRBP 4001(a)(3) (ECF No. 41).

7. On November 20, 2019, New U Life filed its Answer and Counterclaim against T1 Payments, LLC for claims of (1) Declaratory Relief, (2) Breach of Contract; and (3) Breach of the Implied Covenant of Good Faith and Fair Dealing.

8. On January 14, 2021, New U Life filed its First Amended Counterclaim against T1 Payments, LLC, T1 Payments Limited, TGlobal Services, Limited, Donald Kasdon, Debra Karen

King aka Debra Karen Kason, Amber Fairchild, J.L. Marc Lefebvre, Lefebvre International Corporation, and Payvision B.V.,[3] alleging the following claims against all of the Counter-Defendants (1) Fraud, (2) Conversion, (3) Civil Theft, (4) Money Had and Received, (5) Unjust Enrichment, (6) Violation of Civil Rico (NRS 207.470), (7) Violation of Civil Rico, as well as the follow claims against T1 Payments only: (8) Breach of Contract, (9) Breach of the Implied Covenant of Good Faith and Fair Dealing and (10) Declaratory Relief.

9. New U Life's Second Amended Counterclaim asserts claims for the following causes of action: (1) Fraud against all Counter-Defendants; (2) Conversion against T1 Payments LLC, Donald Kasdon, Debra Karen King aka Debra Karen Kason, Amber Fairchild, T1 Payments Ltd., TGlobal Services Ltd., TGlobal Services LLC, Pixxles Ltd., and Pixxles LLC (collectively, the "T1 Parties"); (3) Civil Theft against the T1 Parties; (4) Negligence against Payvision B.V.; (5) Unjust Enrichment against the T1 Parties; (6) Civil Rico (NRS 207.470) against the T1 Parties; (7) Civil Rico (Federal) against all Counter-Defendants; (8) Breach of Contract against T1 Payments, LLC; (9) Breach of the Covenant of Good Faith and Fair Dealing against T1 Payments, LLC and (10)-(11) Declaratory Relief against T1 Payments, LLC.

10. From the commencement of the Nevada Federal Court Case in the Fall of 2019, the parties engaged in extensive litigation, including discovery and motion practice, towards the resolution of the case.

11. In particular, on May 25, 2022, New U Life filed a motion for appointment of a receiver to take control of the $1.451 million in disputed funds, or in the alternative, a preliminary injunction freezing $1.451 million of the T1 Parties' assets ("Receiver Motion").

12. The Receiver Motion has been fully briefed and was heard by the Court on October 14, 2022.

/ / /

/ / /

[3] New U Life subsequently stipulated to dismiss Marc Lefebvre, Lefebvre International Corporation, and Payvision B.V. from the lawsuit.

***Debtor Files for Bankruptcy***

13. However, before the Court could issue its ruling on the pending Receiver Motion, Debtor filed for Chapter 7 bankruptcy relief on January 30, 2023, in the United State Bankruptcy Court, District of Nevada, pending as Case No. 23-10290-mkn before Judge Mike K. Nakagawa. (ECF No. 1).

14. On January 30, 2023, Chapter 7 Trustee Leonard Schwartzer was appointed as the Chapter 7 Trustee (ECF No. 3). Soon after the Debtor's bankruptcy filing, on February 16, 2023, a Notice of Bankruptcy was filed with the United States District Court of Nevada requesting that the matter be stayed. (Fed ECF No. 299).

15. On February 22, 2023, the Federal Court entered a Minute Order in Chambers finding that given the notice of bankruptcy filed by T1 Payments, an automatic stay was in effect pursuant to Section 11 U.S.C. § 362(a) of the Bankruptcy Code.

16. As a result, the Court dismissed the outstanding motions related to the claims against T1 Payments without prejudice and with leave to refile, including the following:

a. Fed. ECF No. 182: T1 Payments LLC and TGlobal Services Ltd.'s Objections to the November 17, 2021 Order Compelling Discovery (Fed. ECF No. 181);

b. Fed. ECF No. 186: T1 Payments LLC and TGlobal Services Ltd.'s Motion for Leave to File Reply in Support of their Objections (Fed. ECF No. 182) to the November 17, 2021 Order Compelling Discovery (Fed. ECF No. 181);

c. Fed. ECF No. 223: T1 Payments LLC and TGlobal Services Ltd.'s Motion for Leave to File Reply in Support of their Objections (ECF No. 182) to the November 17, 2021 Order Compelling Discovery (Fed. ECF No. 181);

d. Fed. ECF No. 226: New U Life's Receiver Motion;

e. Fed. ECF No. 253: T1 Parties' Motion to Dismiss New U Life Corp.'s Second Amended Counterclaims (Fed. ECF No. 215); and

f. Fed. ECF No. 287: T1 Parties' Objection to Magistrate Judge Albregts' October 14, 2022 Order on Fed. ECF No. 225.

17. Additionally, due to allegations by New U Life that Pixxles Limited and the other individuals and corporate T1 Parties are effectively alter egos of the debtor, T1 Payments, the Court further dismissed the following motions without prejudice with leave to refile at such a time when

the Bankruptcy Court determines whether the relevant Counter Defendants are subject to the automatic stay under § 362(a) or actions against them are otherwise enjoined under § 105(a):

a. Fed. EFC No. 254: Debra King and Amber Fairchild's Motion to Dismiss New U Life Corp.'s Second Amended Counterclaim (Fed. ECF No. 215); and

b. Fed. ECF No. 266: Pixxles, Ltd.'s Motion to Dismiss New U Life's Second Amended Counterclaim (Fed. ECF No. 215)

18. On April 7, 2023, Creditor filed its Amended Proof of Claim at Claims Register Number 1-3 identifying an outstanding amount owing to Creditor of $5,260,109.28. *See* Claim No. 1-3.

19. On April 19, 2024, Trustee filed a Motion to Approve Sale of Estate's Interest in Certain Litigation Claims.

20. The Motion seeks approval of the attached Asset Purchase Agreement (the "APA") purporting to transfer claims to the purchaser, Donald Kasdon.

## III. LEGAL ARGUMENT

### A. THE TRUSTEE LACKS STANDING TO ASSERT ALTER EGO CLAIMS PERSONAL TO NEW U LIFE AND MAY NOT ASSIGN THEM.

The trustee "stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy." *Smith v. Arthur Andersen* LLP, 421 F.3d 989, 1002 (9th Cir.2005) (internal quotation marks omitted); 11 U.S.C. §§ 704(1), 541(a)(1). However, the trustee's power is limited. The trustee may assert only claims belonging to the debtor corporation and "has no standing generally to sue third parties on behalf of the estate's creditors." *Smith*, 421 F.3d at 1002 (internal quotation marks omitted). When the trustee does have standing to assert a debtor's claim, that standing is exclusive and divests all creditors of the power to bring the claim. *Estate of Spirtos v. One San Bernardino Cnty. Superior Court Case*, 443 F.3d 1172, 1176 (9th Cir.2006). Although federal bankruptcy law applies to this action, state law determines whether a claim belongs to the trustee or to the creditor. *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *CBS Inc. v Folks,* 211 B.R. 378, 386 (B.A.P. 9th Cir. 1997). Still, when a third party has injured not the bankrupt

corporation itself but a creditor of that corporation, the trustee in bankruptcy cannot bring suit against the third party. *See Attebury Grain, LLC v. Grayn Co*. 2015 WL 13688626.

Nevada has previously established "alter ego analysis to determine whether or not to pierce the corporate veil to find a shareholder, officer, director or affiliated corporation liable for the acts of a corporate defendant. *Frank McCleary Cattle Co. v Sewell*, 73 Nev. 279, 282, 317 P.2d 957, 959 (1957). [4] NRS 86.376 subsequently confirmed application of alter ego jurisprudence to LLCs:

> A person acts as the alter ego of a limited-liability company only if:
>
> (a)The limited-liability company is influenced and governed by the person;
>
> (b)There is such unity of interest and ownership that the limited-liability company and the person are inseparable from each other; and
>
> (c)Adherence to the notion of the limited-liability company being an entity separate from the person would sanction fraud or promote manifest injustice.

Nevada state law further recognizes and distinguishes between general and personalized alter ego claims. *Capiriati Const. Corp v. SPER, Inc. (In re Capiriati Const. Corp.), N*o. NV–17–1200–BHTa, 2018 WL 1404439 (B.A. P. 9th Cir. 2018), Where alter ego claims alleging generalized injury to a debtor entity and all of its creditors are the property of the bankruptcy estate under Section 541 and may only be asserted by the bankruptcy trustee, a particularized, personal claim exists where the claimant himself is harmed and no other claimant or creditor has an interest in his cause. *In re Davy Roofing*, 167 B.R. at 605-08 (where only the Debtor or Trustee has standing to assert the alter ego claim where injury to the corporation is alleged).

New U Life's SACC asserts the following causes of action: (1) Fraud against all Counter-Defendants; (2) Conversion against T1 Payments LLC, Donald Kasdon, Debra Karen King aka Debra Karen Kason, Amber Fairchild, T1 Payments Ltd., TGlobal Services Ltd., TGlobal Services LLC, Pixxles Ltd., and Pixxles LLC (collectively, the "T1 Parties"); (3) Civil Theft against the T1 Parties; (4) Negligence against Payvision B.V.; (5) Unjust Enrichment against the T1 Parties; (6) Civil Rico (NRS 207.470) against the T1 Parties; (7) Civil Rico (Federal) against all Counter-

[4] Reversed on other grounds in *Callie v. Bowling*, 123 Nev. 181, 160 P.3d 878 (2007).

Defendants; (8) Breach of Contract against T1 Payments, LLC; (9) Breach of the Covenant of Good Faith and Fair Dealing against T1 Payments, LLC and (10)-(11) Declaratory Relief against T1 Payments, LLC.

The SACC also includes alter ego allegations, companion to New U's substantive claims, as follows:

> 15. Counterclaim Defendants T1UK, TGlobal Services LLC, TGlobal Services Ltd., Pixxles LLC, and Pixxles Ltd. are wholly-controlled alter egos of T1 Payments LLC (collectively,T1 Payments LLC, T1UK, TGlobal Services Ltd., and TGlobal Services LLC are referred to as the "T1 Payments Entities," and Pixxles LLC and Pixxles Ltd. are together referred to as "Pixxles").
>
> 16. Counterclaim Defendants have conducted the business practices described herein through the interrelated T1 Payments Entities, which have a common business purpose, business functions, and employees; have commingled funds; and are all controlled by Kasdon and others acting at his behest.

None of these claims require a general alter-ego theory of liability, and accordingly, may not be included in the assets of the debtor estate, or the definition of "Estate Litigation Claims" and "Alter Ego Claims" bundle. The SACC details particularized facts and claims against each Counterclaim Defendant, setting forth individualized theories of liability parsed out in each cause of action. Fundamentally, New U Life seeks redress for wrongs committed against New U, and return if its merchant account funds in excess of $1.4M, that were absconded under the auspices that debtor was a "valid" payment processor, and the participation of the non-debtor Defendants in the overall scheme to defraud New U. The claims brought by New U are personal to New U and New U alone; recovery of the $1.4 M from affiliated alter ego sources is not for the benefit of the overall estate.

Here, the Trustee makes no distinction whatsoever in the Estate Litigation Claims, nor the "Alter Ego Claims" and has made no allegation of injury to the debtor itself, either in any adversary proceeding, or lawsuit. Absent some allegation of injury to debtor giving rise to its right of action against the defendants, a trustee cannot maintain an action against them on an alter ego theory. *See Ahcom, Ltd. v. Smeding*, 623 F.3d 1248 (2010), citing *Stodd v. Goldberger*, 73 Cal. App.3d, 827,

141 Cal. Rptr. 67 at 71 (1997 (where the asserted alter ego cause of action belongs to each creditor individually, and the trustee is not the real party in interest.").

In *Stodd*, a bankruptcy trustee sued the debtor's shareholders "on the theory of alter ego [to] establish defendants' personal liability for all of [the debtor's] debts." Id. at 70. The trial court dismissed the action and the California Court of Appeal affirmed, holding that a trustee "cannot maintain an action against defendants on an alter ego theory absent some allegation of injury to the corporation giving rise to a right of action in it against defendants," without which "the asserted cause of action belongs to each creditor individually, and [the trustee] is not the real party in interest." *Id.* at 71 (emphasis added). *Stodd* clarified *Folks* and *Davey Roofing* to imply a general alter ego claim, that a trustee "cannot maintain an action against defendants on an alter ego theory absent some allegation of injury to the corporation giving rise to a right of action in it against defendants " by citing examples of what constitutes such an injury. For example, "an action by a trustee in bankruptcy to recover assets of the bankrupt by setting aside fraudulent and preferential transfers "; "an action by creditors and a trustee in bankruptcy for conversion by a corporate stockholder of assets of the bankrupt corporation "; "an action by the trustee of a bankrupt corporation against the sole shareholders on an alter ego theory upon allegations that ... defendants deposited corporation funds into their personal bank accounts or that corporation funds were received by the defendants personally." *Stodd*, 141 Cal.Rptr. at 71 (internal quotation marks omitted) (emphases added). Stodd teaches that a trustee "is not an appropriate general representative of creditors." 141 Cal.Rptr. at 72. Yet, that is exactly what *Folks* and *Davey Roofing* have made it out to be by allowing the trustee to bring a claim for a made-up cause of action "because all creditors are affected." *Folks*, 211 B.R. at 387.

Because the claims in the SACC are personal and particularized to New U Life, the Trustee lacks standing to assert and/or dispose of those claims.

/ / /

/ / /

/ / /

**B. THE PURCHASE AND SALE AGREEMENT MUST BE REJECTED FOR FAILURE TO EXCLUDE ALTER EGO AND PIERCING OF THE VEIL CLAIMS THAT ARE PERSONAL TO NEW U LIFE.**

Because the Trustee lacks standing to bring alter ego claims personal to the Creditors against the non-debtor parties, the Trustee may not assign or otherwise include New U's alter ego claims in any proceeding, agreement or settlement. (See *In re Living Hope Southwest Medical Services, LLC*, 41. B.R. 485 (2012) (finding that the Bankruptcy Court erred on remand when it approved the settlement agreement in all respects except for "carving out" any alter ego or veil piercing claims, without requiring further proof of settlement after initial reversal on appeal).

The procedural history and final rulings in *In re Living Hope* are directly on point to the instant matter. The trustee in *In re Living Hope* filed an adversary proceeding against numerous defendants related to the debtor LLC, including debtor's lease guarantors and its member(s), under various legal theories *including alter ego claims*. As in the instant matter, the trustee in *Living Hope* sought court approval of a compromise and settlement, which afforded notice of the right to object. In response, Pinewood Enterprises, LLC's (the Creditor landlord) filed its objection to the trustee's motion which was overruled. Pinewood then brought a Motion to Alter and Amend the Judgment and for Additional Findings of Facts and Conclusions of Law, to address deficiencies in the court's Order approving Settlement. Pinewood argued that the settlement should not be approved on the grounds that it encompassed certain claims that the Trustee did not have standing to bring or settle, specifically any claims to pierce the corporate veil or claims against the related entities as alter egos of the debtor. *Id*, at 480. The Court denied Pinewood's Motion.

On appeal to the federal district court, Pinewood's challenge to the Order approving the Settlement for inclusion of the alter ego claims was successful. The Court reversed the Order and remanded the matter to bankruptcy court, ruling that the Trustee had no standing to bring or settle alter ego or veil piercing claims, which belonged to the creditors. Consequently, the bankruptcy court issued a Supplemental Order Approving Settlement stating the "***the settlement is not approved as to any alleged cause of action under any alter ego theory to pierce the corporate veil of the Debtor corporation or any third party corporation or LLC which may only be prosecuted***

***by the creditors of Debtor***." Id, at 490 (emphasis added). The Settlement was again approved in all respects except for carving out "any cause of action under any alter ego theory to pierce the corporate veil. Id at 490.

Here, the Trustee's Motion to Approve Sale of Estate's Interest fails to correctly identify those claims that the Trustee has standing to bring, and to distinguish those claims that are personal to New U (and other similarly situated creditors). As recognized *in Living Hope*, the failure to include the necessary carve out language to excise New U's causes of action and its alter ego claims constitutes reversible error. Any order approving of the sale of claims must contain this limiting language. Otherwise, the sale must be rejected.

**C. THE TRUSTEE MUST REFORM THE LANGUAGE IN THE APA TO AUTHORIZE THE CREDITOR CLAIMS TO PROCEED.**

*In re Living Hope* broadens the parameters of prosecution of claims retained by a creditor, and is authoritative on a creditor's prosecution of personal claims outside of bankruptcy. In reliance upon the Supplemental Order Approving Settlement which carved out the personal alter ego claims, Pinewood proceeded to prosecute its State Court claims. The Trustee then moved to enjoin Pinewood, claiming that Pinewood's pursuit of the State Court action would adversely impact the Trustee's ability to collect settlement proceeds, and reduce the amount of funds available to the estate for payment of creditors. The Trustee also asserted that Pinewood's factual allegations overlapped with the trustee's settled complaints, such that Pinewood was attempting to pursue the trustee's causes of action. The bankruptcy court enjoined Pinewood's action which was the second prong of Pinewood's appeal.

In overturning the grant injunctive relief against Pinewood, the Court reasons that Pinewood's state court claims that involve substantially similar underlying factual allegations as the Trustee's claims does not convert Pinewoods claims to the trustee's. In acknowledging d that "the same underlying facts may give rise to more than one legal theory of recovery", the Court determined that "Pinewood is entitled to bring claims reserved to it as a creditor, including alter ego- and veil-piercing claims- while the trustee is entitled to bring any claims that the trustee has

standing to bring under the rules of bankruptcy, including claims to recover assets post-petition." *Id*. at 498-499.

To the extent that the APA contains language that contradicts the exclusionary language required in the Order, the Purchase and Sale Agreement must be amended as a condition precedent to any approval. As previously discussed, the language in the APA combines all alter ego claims of the enumerated creditors wholesale, and provides no precise description or distinction of what precisely is being sold. Instead, the aggregation of all claims into three "buckets' with a "purchase price" listed per each category improperly implies that these claims are being sold outright, without any limitation or exclusion. Under no circumstances is New U Life (or any other creditor similarly situated) precluded from prosecuting its direct claims as well as personal claims against debtor affiliates under alter ego theories. The structure and language of the Purchase and Sale agreement fundamentally distorts what a buyer is buying, and what the Trustee has the ability to actually sell.

**D. THE PROPOSED SALE IS AGAINST THE INTEREST OF CREDITORS**

Permitting the central defendant Kasdon to acquire wholesale all Estate Litigation Claims, without excluding claims that are personal to the creditors, is contrary to the interest of the creditors and does not serve any benefit. The language of the APA is fatally overbroad, affording Kasdon the ability to misrepresent the status of the claims being litigated, and wrongfully assert that New U Life lacks authority to prosecute its personal claims. Counterclaim Defendants have already absconded with New U Life's funds; the Court must not foreclose New U Life's ability to prosecute its claims against non-debtor defendants by approving purchase and sale documentation that contains material omissions and misapprehensions of law.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

For the reasons discussed above, Creditor respectfully requests that the Motion be denied as to the transfer of alter ego claims personal to New U Life that are not assignable by the Trustee.

DATED: May 8, 2024

**BROWN BROWN & PREMSRIRUT**

By: /s/ Puoy K. Premsrirut

Puoy K. Premsrirut, Esq.

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of BROWN BROWN & PREMSRIRUT and that on May 8, 2024, I caused to be served a true and correct copy of the foregoing **NEW U LIFE CORPORATION'S JOINDER AND OPPOSITION TO TRUSTEE'S MOTION TO APPROVE SALE OF ESTATE'S INTEREST IN CERTAIN LITIGATION CLAIMS (11 U.S.C. § 363)** in the following manner:

☒ (ELECTRONIC SERVICE) Under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities. A copy of the document was also sent via electronic mail to the parties listed on the CM/ECF Bankruptcy Court portal, at their last known email addresses.

☐ (ELECTRONIC MAIL) By transmitting electronically to the following recipient and last known email address:

☐ (UNITED STATES MAIL) By depositing a copy of the above-referenced document for mailing in the United States Mail, first class postage prepaid, at Las Vegas, Nevada, to the parties listed below, at their last known mailing addresses:

*<u>/s/ Kami C. DeSavio</u>*
An employee of
Brown Brown & Premsrirut